# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| KEVIN PIERCE; PIERCE INVESTMENT COMPANY; PIERCE INVESTMENTS, LLC; and HAWKES CO., INC.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY; ANDREW WHEELER, in his official capacity as Administrator of the Environmental Protection Agency; UNITED STATES ARMY CORPS OF ENGINEERS; and R.D. JAMES, in his official capacity as Assistant Secretary for Civil Works, Department of the Army,<br><br>Defendants. | Case No. _____<br><br>**COMPLAINT** |

## INTRODUCTION

1.     This lawsuit is about the proper interpretation of the term "navigable waters" in the Clean Water Act, 33 U.S.C. §§ 1362(12) and 1362(7). The Clean Water Act is a strict liability statute that imposes severe criminal penalties for unpermitted discharges to "navigable waters." Permitting is onerous and expensive, costing years of time and hundreds of thousands of dollars on average. What "waters" are "navigable" is thus a major question. In 1986, the Environmental Protection Agency (EPA) and Army Corps of Engineers (Army) adopted joint regulations (the 1986 Regulations) that interpreted the term broadly to include extensive non-navigable water bodies and features upstream of and

- 1 -

even isolated from navigable-in-fact rivers and lakes. In 2015, EPA and the Army replaced the 1986 Regulations with a new regulation that re-interpreted the term even more broadly (the 2015 Navigable Waters Definition). Federal courts have enjoined the 2015 Navigable Waters Definition in roughly half of the country, but not in Minnesota.

2.      Plaintiffs own or operate real property with aquatic features in Minnesota, and are potentially subject to EPA and Army permitting and enforcement, depending on the applicability and validity of the 1986 Regulations and the 2015 Navigable Waters Definition. Plaintiffs challenge several provisions of the 2015 Navigable Waters Definition, as either exceeding the agencies' statutory authority under the Clean Water Act or Congress' authority under the Commerce Clause, the Due Process Clause, and the Tenth Amendment. Plaintiffs ask this Court to clarify which regulations are applicable to them, and to determine which provisions of the applicable regulations are statutorily or constitutionally invalid.

## JURISDICTION AND VENUE

3.      Jurisdiction is founded upon 28 U.S.C. § 1331 (federal question); § 1346(a)(2) (civil action against the United States); § 2201 (authorizing declaratory relief); § 2202 (authorizing injunctive relief and any other "necessary and proper" relief); and 5 U.S.C. § 702 (judicial review of agency action under the Administrative Procedure Act).

4.      Plaintiffs have exhausted all administrative remedies.

5.      This action is timely. 28 U.S.C. § 2401(a).

6.     The challenged rules are final agency actions, ripe for judicial review. 5 U.S.C. § 704.

7.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(e)(2), because Plaintiff Pierce Investment Company resides in this District. *See also* 5 U.S.C. § 703 (venue for actions under the Administrative Procedure Act generally proper in "a court of competent jurisdiction").

## PARTIES

### PLAINTIFFS

8.     Kevin Pierce is an individual residing in North Dakota. He is an officer, director, and part owner of Plaintiffs Pierce Investment Company, Pierce Investment, LLC, and Hawkes Co., Inc.

9.     Pierce Investment Company is a Minnesota corporation with its principal place of business in Minnesota. Pierce Investment Company owns property in Minnesota that Plaintiffs anticipate the Army will claim is subject to federal regulation under the Clean Water Act.

10.     Pierce Investments, LLC, is a North Dakota limited liability company with its principal place of business in North Dakota. Pierce Investments, LLC, is co-owner with Pierce Investment Company in the property over which Plaintiffs anticipate the Army will claim authority.

11.     Hawkes Co., Inc. is incorporated and has its principal place of business in North Dakota, and conducts substantial business operations in Minnesota. Hawkes Co.,

Inc. will pay Pierce Investment Company and Pierce Investments, LLC, royalties for its use of the above referenced property to expand Hawkes' nearby peat mining operations.

12.     Pierce Investment Company and Hawkes Co., Inc., jointly challenged the Army's jurisdictional determination over a separate property in this Court in *Hawkes Co., Inc. v. United States Army Corps of Engineers*, 963 F. Supp. 2d 868 (D. Minn. 2013). That case was dismissed by this Court for lack of subject matter jurisdiction and was subsequently appealed to the Eighth Circuit (13-3067). The Eighth Circuit overturned the district court decision and held the jurisdictional determination is subject to immediate judicial review under the Administrative Procedure Act. *See Hawkes Co., Inc. v. United States Army Corps of Engineers*, 782 F.3d 994 (8th Cir. 2015), *aff'd*, 136 S. Ct. 1807 (2016). Plaintiffs are in the planning stages of another project over which Plaintiffs anticipate the Army will claim authority under the 2015 Navigable Waters Definition.

## DEFENDANTS

13.     The United States Environmental Protection Agency is a cabinet agency and has enforcement responsibility for portions of the Clean Water Act affected by the 2015 Navigable Waters Definition. The EPA jointly issued the regulations challenged in this action.

14.     Andrew Wheeler is the Administrator of the EPA. His predecessor Gina McCarthy signed the 2015 Navigable Waters Definition on behalf of EPA on June 29, 2015.

15.     The United States Army Corps of Engineers is a branch of the Department of the Army and has enforcement responsibility for portions of the Clean Water Act

affected by the 2015 Navigable Waters Definition. The Army jointly issued the regulations challenged in this action.

16.     R.D. James is the Assistant Secretary of the Army for Civil Works. His predecessor Jo-Ellen Darcy signed the 2015 Navigable Waters Definition on behalf of the Army on June 29, 2015.

## LEGAL BACKGROUND

17.     For over a hundred years, the United States Congress regulated the obstruction of navigation on rivers and lakes through a series of statutes that applied to "navigable waters of the United States." *Rapanos v. United States*, 547 U.S. 715, 723 (2006). In a line of cases originating with *The Daniel Ball*, the Supreme Court of the United States interpreted this term to refer to

> [t]hose rivers . . . which are navigable in fact[, *i.e.*] when they are used, or are susceptible of being used, in their ordinary condition, as highways for commerce over which trade and travel are or may be conducted in the customary modes of travel on water. And they constitute navigable waters of the United States within the meaning of the acts of Congress, in contradistinction from the navigable waters of the States, when they form in their ordinary condition by themselves, or by uniting with other waters, a continued highway over which commerce is or may be carried on with other States or foreign countries in the customary modes in which such commerce is conducted by water.

77 U.S. 557, 563 (1870); *see also Rapanos*, 547 U.S. at 723. Federal courts can take judicial notice of whether or not a given river or lake is navigable-in-fact, although the precise portions of it that are navigable may require consideration of evidence. *United States v. Rio Grande Dam & Irrigation Co.*, 174 U.S. 690, 698 (1899).

18.     The phrase "navigable waters of the United States" was used in Section 10 of the Rivers and Harbors Act when that act was first adopted in 1899, Mar. 3, 1899, c. 425, § 10, 30 Stat. 1151, and remains in use today, 33 U.S.C. § 403. Section 10 also prohibits obstructions to "the navigable capacity of the waters of the United States" unless authorized by Congress. 33 U.S.C. § 403.

### The Clean Water Act

19.     In 1972, Congress adopted significant amendments to the Federal Water Pollution Control Act, 33 U.S.C. § 1251, *et seq.*, which has since been called the Clean Water Act (the Act). The Act prohibits unpermitted discharges, defined as additions of pollutants from point sources to navigable waters. 33 U.S.C. §§ 1311(a), 1362(12). The Act assigns general permitting authority to the EPA, with specific permitting authority assigned to the Army Corps of Engineers to permit discharges of dredged or fill material. 33 U.S.C. §§ 1342(a)(1), 1344(a). So, the meaning of the term "navigable waters" is what determines whether any particular action is prohibited and/or subject to permitting by the Act. The Act defines "navigable waters" to "mean[] the waters of the United States, including the territorial seas." 33 U.S.C. § 1362(7).

20.     The Act's words "navigable waters" and "waters of the United States, including the territorial seas" are very close to the predecessor statutes' words "navigable waters of the United States" and the expression "navigable capacity of the waters of the United States" in Section 10 of the Rivers and Harbors Act. This evinces a congressional intent that the terms be interpreted in a closely related way. The only significant variation in the terms is the Clean Water Act's introduction of the term "the territorial seas." This

indicates that the Act applies to navigable-in-fact waters as defined in *The Daniel Ball* and referenced in Section 10 of the Rivers and Harbors Act, and *downstream* waters to and including the territorial seas.

21.     Nothing in the Act's definition of "navigable waters" extends the term to non-navigable waters of any sort (e.g., tributaries and "adjacent waters") that are upstream of or isolated from navigable-in-fact waters. Nothing in the legislative history of the Act shows that Congress "intended to exert anything more than its commerce power over navigation." *Solid Waste Agency of N. Cook Cty. v. Army Corps of Eng'rs*, 531 U.S. 159, 168 n.3 (2001) (*SWANCC*). In contrast, when Congress has intended to extend its reach to waters that are not navigable, it has said so expressly. For instance, with the Flood Control Act of 1936, Congress claimed authority over "navigable waters or their tributaries, including watersheds thereof." 33 U.S.C. § 701(a); 49 Stat. 1570.

22.     To the extent that "navigable waters" under the Act were to be interpreted to include any non-navigable waters upstream of navigable-in-fact waters, the Act provides no intelligible principle for determining which non-navigable waters are included.

### *Early Agency Regulations And Riverside Bayview Homes*

23.     In 1974 the Army adopted regulations defining "navigable waters" under the Act to implement its permitting authority, consistent with the historic definition adopted in *The Daniel Ball*. 39 Fed. Reg. 12,119 (Apr. 3, 1974); *Rapanos*, 547 U.S. at 723; *SWANCC*, 531 U.S. at 169. The U.S. District Court for the District of the District of Columbia ruled that these regulations were inadequate in *Natural Resources Defense Council, Inc. v. Callaway*, 392 F. Supp. 685, 686 (D.D.C. 1975). The Army was subsequently unable to

identify any "persuasive evidence that [it] mistook Congress' intent in 1974." *SWANCC*, 531 U.S. at 168.

24.     But instead of appealing the trial court ruling, the Army adopted new and significantly broader regulations in 1975, 1977, and 1982. These regulations added the regulation of wetlands as "navigable waters" for the first time. *See generally United States v. Riverside Bayview Homes, Inc.*, 474 U.S. 121, 123-24 (1985).

25.     In 1985 the Supreme Court decided *Riverside Bayview Homes*, which holds that the Army regulations then in effect reasonably interpreted "navigable waters" to include a non-navigable wetland adjacent to a navigable-in-fact creek. 474 U.S. at 135. The Supreme Court did not consider, in *Riverside Bayview Homes*, whether "navigable waters" included wetlands that were not actually adjacent to navigable-in-fact waters. *Id.* at 124 n.2; *id.* at 131 n.8.

### *The 1986 Regulations*

26.     In 1986, EPA and the Army jointly adopted new and coordinated regulations defining "navigable waters" to include:

- All navigable-in-fact waters, plus all waters which are, were, or reasonably could be used more generally in interstate commerce (33 C.F.R. § 328.3(a)(1) (1987)[1]);
- The territorial seas (33 C.F.R. § 328.3(a)(6) (1987));
- All interstate waters including interstate wetlands ("Interstate Waters") (33 C.F.R. § 328.3(a)(2) (1987));
- All intrastate waters (whether navigable or not) that met various criteria ("Covered Intrastate Waters") (33 C.F.R. § 328.3(a)(3) (1987));

---

[1] For ease of reference, the Army's regulations are cited throughout. From the 1986 Regulations forward, both EPA and the Army's regulations are identical in relevant part.

- All non-navigable tributaries to navigable-in-fact waters, Interstate and Covered Intrastate Waters, and Impoundments ("Non-navigable Tributaries") (33 C.F.R. § 328.3(a)(5) (1987));

- Wetlands adjacent to (meaning "bordering, contiguous, or neighboring") the territorial seas, navigable-in-fact waters, Interstate and Covered Intrastate Waters, and their Non-navigable Tributaries  (33 C.F.R. §§ 328.3(a)(7), 328.3(c) (1987)); and

- All impoundments of all other waters covered by the definition ("Impoundments") (33 C.F.R. § 328.3(a)(4) (1987)).

33 C.F.R. § 328.3(a) (1987); 51 Fed. Reg. 41,206, 41,250-51 (Nov. 13, 1986) (the "1986 Regulations").

27.     When it adopted the 1986 Regulations, the Army also adopted EPA's prior position that "navigable waters" included all waters (1) used to irrigate crops sold in interstate commerce, (2) served as habitat for birds protected by the Migratory Bird Treaty Act, (3) served as habitat for endangered species, or (4) "which are or would be used as habitat by migratory birds which cross state lines." 51 Fed. Reg. 41,217 (Nov. 13, 1986). The last of these provisions was known as the Migratory Bird Rule.

**SWANCC *and* Rapanos**

28.     The 1986 Regulations were the subject of two subsequent adverse Supreme Court decisions. In *SWANCC*, the Supreme Court invalidated the Migratory Bird Rule as beyond the scope of "navigable waters" under the Act. *SWANCC* narrowed *Riverside Bayview Homes* by emphasizing that the word "navigable" in the text of the Act demonstrates that Congress' intent was focused on its "traditional jurisdiction over waters that were . . . navigable in fact." 531 U.S. at 172. In *SWANCC* the Court further emphasized the dual purposes of the Act, with federalism and local control of land use and water

allocation equal to the federal policy of water quality protection, and that the Clean Water Act lacks the necessary "clear statement" to indicate any congressional intent to interfere in traditionally local functions. *Id.* at 172-74. *SWANCC* also posits that the Army's original 1974 regulations defining "navigable waters" consistent with the meaning set forth in *The Daniel Ball* may have been correct. 531 U.S. at 168, *id.* at 168 n.3.

29.    Then in a fractured opinion in *Rapanos*, the Supreme Court invalidated the Non-navigable Tributary and Adjacent Wetlands provisions of the 1986 Regulations, also as beyond the scope of the statutory term "navigable waters."

30.    The issue in *Rapanos* was how to interpret the Clean Water Act's term "navigable waters" in the context of non-navigable tributaries to navigable-in-fact waterways, and wetlands that do not physically abut navigable-in-fact waterways. 547 U.S. at 728, *id.* at 759 (Kennedy, J., concurring). The judgment of the Court in *Rapanos* was to remand the case because the lower courts had not properly interpreted that term. *Id.* at 757. The five Justices who supported the judgment arrived at it by two different interpretations of the term "navigable waters."

31.    The plurality determined that the language, structure, and purpose of the Clean Water Act all limited federal authority to "relatively permanent, standing or continuously flowing bodies of water" commonly recognized as "streams, oceans, rivers and lakes" connected to traditional navigable waters. *Id.* at 732, 739; *see also id.* at 742. The plurality also authorized federal regulation of wetlands physically abutting these water bodies, such that they have an immediate surface water connection where the wetland and water body are "indistinguishable." *Id.* at 755.

32.    Justice Kennedy joined the plurality in the judgment. But he proposed a broader interpretation of "navigable waters" than the plurality: the "significant nexus" test. *Id.* at 759 (Kennedy, J., concurring). Under this view, the federal government could regulate a non-abutting wetland if it significantly affects the physical, chemical, and biological integrity of a navigable-in-fact waterway. *Id.* at 779 (Kennedy, J., concurring).

### *2008 Post-***Rapanos** *Guidance*

33.    Following *Rapanos*, EPA and the Army jointly adopted an informal guidance document (the 2008 Post-*Rapanos* Guidance) which purported to apply the *Rapanos* decision to the 1986 Regulations.

34.    The 2008 Post-*Rapanos* Guidance is a "rule" within the ambit of the Congressional Review Act, 5 U.S.C. § 801, *et seq.*, but was not and has never been submitted to Congress as the Congressional Review Act requires.

35.    The Post-*Rapanos* Guidance asserts that the Army and EPA may exercise authority under either the *Rapanos* plurality or concurrence.

36.    The Guidance also asserts that the *Rapanos* plurality standard is satisfied by tributaries that flow as little as 90 days per year, and broadly defines "adjacent" for the purpose of regulating adjacent wetlands.

### *The 2015 Navigable Waters Definition*

37.    In 2015, EPA and the Army adopted yet another new regulation (the 2015 Navigable Waters Definition) purporting to define the Act's term "navigable waters." 33 C.F.R. § 328.3 (2016); 80 Fed. Reg. 37,054 (June 29, 2015). The 2015 Navigable

Waters Definition superseded the 1986 Regulations and any guidance interpreting the 1986 Regulations.

38.     33 C.F.R. § 328.3(a) of the 2015 Navigable Waters Definition defines "navigable waters" to include:

(1) Navigable-in-fact waters, plus all waters which are, were, or reasonably could be used more generally in interstate commerce;

(2) All interstate waters, including interstate wetlands;

(3) The territorial seas;

(4) All impoundments of other included waters;

(5) All tributaries of navigable-in-fact and interstate waters and the territorial seas ("(a)(1)-(3) Waters");

(6) All waters adjacent to navigable-in-fact and interstate waters, the territorial seas, impoundments, and tributaries ("(a)(1)-(5) Waters");

(7) Certain types of wetlands, ponds, and bays occurring in different regions of the country, as determined on a case-by-case basis to have a significant nexus to (a)(1)-(3) Waters; and,

(8) Certain waters within the 100-year floodplain of (a)(1)-(3) Waters, and certain additional waters within 4,000 feet of (a)(1)-(5) Waters, as determined on a case-by-case basis to have a significant nexus to (a)(1)-(3) Waters.

39.     Section 328.3(c)(1) of the 2015 Navigable Waters Definition defines "adjacent" as bordering, contiguous, or neighboring (a)(1)-(5) Waters.

40.     Section 328.3(c)(2) of the 2015 Navigable Waters Definition defines "neighboring" as within 100 feet of the ordinary high water mark of an (a)(1)-(5) Water, within the 100-year floodplain and within 1,500 feet of the ordinary high water mark of (a)(1)-(5) Waters, or within 1,500 feet of (a)(1)-(3) Waters including the Great Lakes.

41.     Section 328.3(c)(3) of the 2015 Navigable Waters Definition defines "tributary" as a water with a bed and bank and an ordinary high water mark, that contributes flow to (a)(1)-(3) Waters.

42.     Section 328.3(c)(5) defines "significant nexus" based on nine factors, most of which are ecological factors unrelated to navigation.

43.     Plaintiff Hawkes Co., Inc. submitted substantive comments to the EPA and the Army during the public comment period of the rulemaking for the 2015 Navigable Waters Definition. These comments objected to the inclusion of interstate waters, intrastate waters that are not navigable-in-fact, and the regulation of all non-navigable tributaries and all adjacent wetlands and other waters.

44.     EPA and the Army adopted certain provisions of the 2015 Navigable Waters Definition without notice and an opportunity to comment in violation of the Administrative Procedures Act, including the definition of "neighboring" in Section 328.3(c)(2), the inclusion of certain types of wetlands under Section 328.3(a)(7), the inclusion of waters within 4,000 feet of (a)(1)-(5) Waters on a case-by-case basis in Section 328.3(a)(8), and the catalog of factors for determining significant nexus in Section 328.3(c)(5).

### *Litigation Challenging The*
### *2015 Navigable Waters Definition*

45.     Plaintiffs previously filed suit to challenge the 2015 Navigable Waters Definition in the U.S. District Court for the District of Minnesota on July 15, 2015, case number 0:15-cv-03058-DWF-LIB (the 2015 Lawsuit).

46.     The District Court for the District of Minnesota dismissed Plaintiffs' complaint in the 2015 Lawsuit without prejudice on November 8, 2016, on the ground that 33 U.S.C. § 1369(b)(1)(E) and (F) vested exclusive jurisdiction over Plaintiffs' claims in the circuit courts of appeals rather than the district courts. *See Washington Cattlemen's Ass'n v. EPA*, No. 0:15-cv-03058-DWF-LIB, docket no. 50, 2016 WL 6645765 (D. Minn. Nov. 8, 2016).

47.     Due to the potential impact of 33 U.S.C. § 1369(b)(1), Plaintiffs also litigated their claims against the 2015 Navigable Waters Definition in the Sixth Circuit. *See In re U.S. Dep't of Defense*, *U.S. E.P.A. Final Rule: Clean Water Rule: Definition of Waters of the U.S.*, 817 F.3d 261 (6th Cir. 2016) (Plaintiffs' petition number was 15-4188).

48.     On October 9, 2015, the Sixth Circuit stayed the 2015 Navigable Waters Definition nationwide. *In re EPA*, 803 F.3d 804 (6th Cir. 2015). From the 2015 Navigable Waters Definition's effective date of August 28, 2015, until the Sixth Circuit stayed the rule on October 9 of that year, the 2015 Navigable Waters Definition was the legal status quo in Minnesota.

49.     On January 22, 2018, the Supreme Court of the United States held, in *National Association of Manufacturers v. Department of Defense*, 138 S. Ct. 617 (2018), that 33 U.S.C. § 1369(b)(1)(E) and (F) do not apply to cases challenging the 2015 Navigable Waters Definition, that the suits challenging them were within the jurisdiction of the district courts, and that the Sixth Circuit lacked jurisdiction to entertain Plaintiffs' pending petition for review.

50.     Following the Supreme Court's decision in *National Association of Manufacturers*, the Sixth Circuit dissolved its nationwide stay and dismissed Plaintiffs' petition challenging the 2015 Navigable Waters Definition on February 28, 2018. *In re United States Department of Defense*, 713 Fed. Appx. 489 (6th Cir. 2018).

51.     Following the Supreme Court's decision in *National Association of Manufacturers*, litigation has resumed against the 2015 Navigable Waters Definition in multiple district courts across the country.[2]

52.     Since 2018, four courts enjoined the 2015 Navigable Waters Definition. *See Georgia v. Pruitt*, 326 F. Supp. 3d 1356 (S.D. Ga. 2018) (granting preliminary injunction in Georgia, Alabama, Florida, Indiana, Kansas, North and South Carolina, Utah, West Virginia, Wisconsin, and Kentucky); *North Dakota v. EPA*, 127 F. Supp. 3d 1047, 1060 (D.N.D. 2015) (granting preliminary injunction before the 2015 Navigable Waters Definition took effect in North and South Dakota, Alaska, Arizona, Arkansas, Idaho, Iowa, Missouri, Montana, Nebraska, Nevada, Wyoming, and New Mexico); *Oregon Cattlemen's Ass'n v. EPA*, No. 3:19-cv-000564 (D. Or. July 17, 2019) (granting preliminary injunction in Oregon); *Texas v. EPA*, No. 3:15-cv-00162, 2018 WL 4518230 (S.D. Tex. Sept. 12, 2018) (granting preliminary injunction in Texas, Louisiana, and Mississippi).[3]

---

[2] Plaintiffs' accompanying Notice of Related Litigation provides a complete list as Plaintiffs have been able to identify.

[3] The Southern District of Texas entered a preliminary injunction in 2018 and on May 28, 2019 granted summary judgment in favor of the Plaintiffs and ordered that the injunction remain in place while the 2015 Navigable Waters Definition is remanded to the agencies for further consideration. *See Texas v. EPA*, No. 3:15-cv-00162, 2019 WL 2272464 (S.D. Texas May 28, 2019).

53.     No court has enjoined the 2015 Navigable Waters Definition in the state of Minnesota.

### The Current Regulatory Landscape

54.     In anticipation of the Sixth Circuit's dissolution of its nationwide stay of the 2015 Navigable Waters Definition, EPA and the Army adopted a regulation on February 6, 2018, adding a February 6, 2020, applicability date to the 2015 Navigable Waters Definition (the Applicability Date Rule). *See* 33 C.F.R. § 328.3(e) (2019); 83 Fed. Reg. 5208 (Feb. 6, 2018).

55.     Multiple groups of litigants have filed suit against the Applicability Date Rule. One federal district court has enjoined it nationwide, *see South Carolina Coastal Conservation League v. Pruitt*, 318 F. Supp. 3d 959 (D.S.C. 2018), and another has vacated the Applicability Date Rule nationwide, *see Puget Soundkeeper Alliance v. Wheeler*, No. C15-1342-JCC, 2018 WL 6169196 (W.D. Wash. Nov. 26, 2018). On or about March 8, 2019, EPA and the Army abandoned their appeals from these orders. *See Puget Soundkeeper Alliance v. Wheeler*, Ninth Circuit Case No. 19-35074, Unopposed Motion to Voluntarily Dismiss Appeal, March 8, 2019, Docket Entry 11; *South Carolina Coastal Conservation League v. Wheeler*, Fourth Circuit Case No. 19-1988(L), Unopposed Motion to Voluntarily Dismiss Appeal, March 8, 2019, Document 25.

56.     Since no court has enjoined the 2015 Navigable Waters Definition in Minnesota, and the Applicability Date Rule that was intended to defer imposition of the 2015 Definition has been enjoined with no further appeals pending, Plaintiffs are presently subject to the 2015 Navigable Waters Definition, for all purposes.

57.     EPA and the Army are presently considering a regulation that would repeal the 2015 Navigable Waters Definition and recodify the 1986 Regulations (the "Repeal and Recodify Rule"). The agencies have taken two rounds of public comment on the proposed Repeal and Recodify Rule, and have yet to issue a final rule.

58.     The proposed Repeal and Recodify Rule would readopt the 1986 Regulations and related guidance documents. 82 Fed. Reg. 34,899, 34,900 (July 27, 2017). But the agencies refused to consider public comment on the substance of the 1986 Regulations and related guidance. 82 Fed. Reg. 34,903.

59.     The refusal to take comment on the proposed "administration" of the 1986 Regulations, Post-*Rapanos* Guidance, and other guidance documents, violated EPA and the Army's obligations for notice and comment rulemaking under the Administrative Procedure Act, 5 U.S.C. § 553(c).

60.     The 1986 Regulations and related guidance which EPA and the Army propose to readopt under the proposed Repeal and Recodify Rule were not and have never been submitted to Congress for review, in violation of the Congressional Review Act.

61.     Several provisions of the 1986 Regulations, and certain provisions of the related guidance, exceed the scope of the Clean Water Act, in that both the Migratory Bird Rule (adopted as guidance at the time the 1986 Regulations were adopted) and the Tributary and Adjacent Wetland rules, have all been declared invalid by the Supreme Court.

62.     The 1986 Regulation's inclusion of all interstate waters and of many instrastate waters that are not navigable-in-fact also exceeds the agency's authority under the Act.

63.     At such time as EPA and the Army finalize and promulgate the Repeal and Recodify Rule, Plaintiffs anticipate seeking leave to amend or supplement this complaint to raise claims against the Repeal and Recodify Rule.[4]

## DECLARATORY RELIEF ALLEGATIONS

64.     The preceding paragraphs are incorporated herein.

65.     The validity of the 2015 Navigable Waters Definition, are the subject of a live controversy. Plaintiffs contend the 2015 Definition changes and broadens the substantive standards for determining jurisdictional waters under the Clean Water Act in violation of statutory and constitutional authority. Defendants claim the Final Rule merely "clarifies" existing standards and is consistent with these authorities.

66.     No factual development is necessary to resolve this case as Plaintiffs raise a pure legal challenge to the 2015 Navigable Waters Definition on its face.

67.     Plaintiffs are injured by the 2015 Navigable Waters Definition because they hold beneficial interests in property that is or will be subject to increased federal regulatory authority under the various regulations challenged and illegal standards for determining jurisdiction. This will require such landowners to seek federal permit approval (at significant cost) to use their property for its intended purpose. Or, it will require Plaintiffs

---

[4] Plaintiffs will amend of right if within the timeframe to do so under the Federal Rules of Civil Procedure.

to seek a determination from the Army or a private party expert whether the final rule applies to them. *See Hawkes*, 782 F.3d at 1003 (Kelly, J., concurring) ("This is a unique aspect of the CWA; most laws do not require the hiring of expert consultants to determine if they even apply to you or your property."), *aff'd*, *Army Corps of Engineers v. Hawkes Co.*, 136 S. Ct. 1807 (2016).

68.     Accordingly, an actual and substantial controversy exists between Plaintiffs and Defendants as to the parties' respective legal rights and responsibilities. A judicial determination of the parties' rights and responsibilities arising from this actual controversy is necessary and appropriate at this time.

### INJUNCTIVE RELIEF ALLEGATIONS

69.     The preceding paragraphs are incorporated herein.

70.     Because of the 2015 Navigable Waters Definition's broadened and illegal jurisdictional interpretation of "navigable waters" under the Clean Water Act, Plaintiffs will now be required to obtain federal approval of new and ongoing land-use projects at a cost of tens of thousands of dollars and months, if not years, of delay.

71.     Plaintiffs will continue to be injured by the Army and EPA's expanded interpretation of "navigable waters" under the Clean Water Act.

72.     Enjoining the enforcement of the 2015 Navigable Waters Definition will redress these harms.

73.     Plaintiffs have no plain, speedy, and adequate remedy at law and, absent judicial intervention, Plaintiffs will suffer irreparable injury.

74.     If not enjoined, the Army and EPA will enforce the 2015 Navigable Waters Definition, based on its erroneous interpretation of "navigable waters" under the Act.

### FIRST CLAIM FOR RELIEF
#### (*Ultra Vires* Regulation of All "Tributaries" with an Ordinary High Water Mark)

75.     The preceding paragraphs are incorporated herein.

76.     Under the Clean Water Act, the Army and EPA may regulate "navigable waters" defined in the statute as "waters of the United States, including territorial seas." *See* 33 U.S.C. §§ 1344(a), 1362(7).

77.     The 2015 Navigable Waters Definition defines "navigable waters" to include all tributaries with an ordinary high water mark. 80 Fed. Reg. 37,104-106.

78.     In *Rapanos*, a majority of the Supreme Court held that the term "navigable waters" does not include all tributaries with an ordinary high water mark. *Rapanos*, 547 U.S. at 725 (rejecting the regulation of tributaries based on an ordinary high water mark because "[t]his interpretation extended 'the waters of the United States' to virtually any land feature over which rainwater or drainage passes and leaves a visible mark—even if only 'the presence of litter and debris'" (quoting *SWANCC*, 531 U.S. at 163-64)). *See also id.* at 781 (Kennedy, J., concurring) (rejecting categorical regulation of tributaries with an ordinary high water mark because "the breadth of this standard . . . [would] leave wide room for regulation of drains, ditches and streams remote from any navigable-in-fact water and carrying only minor water volumes toward it").

79.     Categorical regulation of all tributaries with an ordinary high water mark exceeds the scope of the Clean Water Act as interpreted by the Supreme Court. Therefore,

the 2015 Navigable Waters Definition is arbitrary and capricious, and contrary to law, in violation of the Administrative Procedure Act. *See* 5 U.S.C. § 706(2)(A).

## SECOND CLAIM FOR RELIEF
### (*Ultra Vires* Regulation of All Waters "Adjacent" to All "Tributaries" with an Ordinary High Water Mark)

80.     The preceding paragraphs are incorporated herein.

81.     It is axiomatic that if the regulation of all tributaries with an ordinary high water mark is invalid then the categorical regulation of all waters adjacent to such tributaries is also invalid. *See Rapanos*, 547 U.S. at 781-82 (Kennedy, J., concurring) (Regulation of all tributaries with an ordinary high water mark "precludes its adoption as the determinative measure of whether adjacent wetlands are likely to play an important role in the integrity of an aquatic system comprising navigable waters as traditionally understood. Indeed, in many cases wetlands adjacent to tributaries covered by this standard might appear little more related to navigable-in-fact waters than were the isolated ponds held to fall beyond the Act's scope in *SWANCC*.").

82.     The 2015 Navigable Waters Definition interprets the Act as including all waters adjacent to any tributary. 33 C.F.R. § 328.3(a)(6); 80 Fed. Reg. 37,104 (June 29, 2015).

83.     Categorical regulation of all waters adjacent to all tributaries with an ordinary high water mark exceeds the scope of the Clean Water Act as interpreted by the Supreme Court. Therefore, the 2015 Navigable Waters Definition is arbitrary and capricious, and contrary to law, in violation of the Administrative Procedure Act. *See* 5 U.S.C. § 706(2)(A).

## THIRD CLAIM FOR RELIEF

- 21 -

(*Ultra Vires* **Regulation Of All Interstate Waters**)

84.     The preceding paragraphs are incorporated herein.

85.     The 2015 Navigable Waters Definition purports to regulate all interstate waters regardless of navigability or connection to navigable-in-fact waters. 33 C.F.R. § 328.3(a)(2); 80 Fed. Reg. 37,104 (June 29, 2015).

86.     Such waters would include isolated waters or waters that the Supreme Court determined would have no connection or effect on navigable-in fact waters and could not be regulated under the Clean Water Act. *See SWANCC*, 531 U.S. at 171-72  ("We cannot agree that Congress' separate definitional use of the phrase 'waters of the United States' constitutes a basis for reading the term 'navigable waters' out of the statute. We said in *Riverside Bayview Homes* that the word 'navigable' in the statute was of 'limited import' and went on to hold that § 404(a) extended to nonnavigable wetlands adjacent to open waters. But it is one thing to give a word limited effect and quite another to give it no effect whatever. The term 'navigable' has at least the import of showing us what Congress had in mind as its authority for enacting the CWA: its traditional jurisdiction over waters that were or had been navigable in fact or which could reasonably be so made.") (internal citation omitted).

87.     Categorical regulation of all interstate waters would exceed the scope of the Clean Water Act as interpreted by the Supreme Court. Therefore, the 2015 Navigable Waters Definition is arbitrary and capricious, and contrary to law, in violation of the Administrative Procedure Act. *See* 5 U.S.C. § 706(2)(A).

**FOURTH CLAIM FOR RELIEF**

(*Ultra Vires* **Regulation of Isolated Waters**)

88.     The preceding paragraphs are incorporated herein.

89.     The 2015 Navigable Waters Definition purports to regulate all waters within 4,000 feet of another jurisdictional water if it has a "significant nexus" to an interstate water or navigable-in-fact water. 33 C.F.R. § 328.3(a)(8); 80 Fed. Reg. at 37,104-105.

90.     This necessarily includes "isolated waters" which the Supreme Court has held as a matter of law cannot be regulated under the Clean Water Act. *See SWANCC*, 531 U.S. at 172.

91.     The regulation of isolated water bodies would exceed the scope of the Clean Water Act as interpreted by the Supreme Court in *SWANCC* and affirmed in *Rapanos*. Therefore, the 2015 Navigable Waters Definition is arbitrary and capricious, and contrary to law, in violation of the Administrative Procedure Act. *See* 5 U.S.C. § 706(2)(A).

## FIFTH CLAIM FOR RELIEF
### (Plaintiffs Were Denied Their Right To
### Notice and Comment)

92.     The preceding paragraphs are incorporated herein.

93.     Federal agencies must conduct rulemaking in accord with the Administrative Procedure Act which requires public notice of substantive rule changes and an opportunity for public comment on those changes. 5 U.S.C. § 553(b), (c).

94.     Among other things, the final 2015 Navigable Waters Definition substantially changed the category of "adjacent waters" from the proposed rule by including a definition of "neighboring" that includes: (1) all waters located within 100 feet of the ordinary high water mark of certain waters; (2) all waters within the 100-year

floodplain and 1,500 feet of the ordinary high water mark of certain waters; and (3) all waters located within 1,500 feet of the high tide line of certain waters. This change was not subject to public review and comment.

95.     The final 2015 Navigable Waters Definition substantially changed the category of "other waters" from the proposed rule by aggregating normally isolated waters to determine if they will have a "significant nexus" with downstream navigable-in-fact waters including: Prairie potholes; Carolina and Delmarva bays; pocosins; western vernal pools in California; and Texas coastal prairie wetlands. This change was not subject to public review and comment.

96.     The final 2015 Navigable Waters Definition also substantially changed the category of "other waters" from the proposed rule by aggregating normally isolated waters to determine if they will have a "significant nexus" with downstream navigable-in-fact-waters including: Prairie potholes, Carolina and Delmarva bays; pocosins; western vernal pools in California; and Texas coastal prairie wetlands. This change was not subject to public review and comment.

97.     And, the final 2015 Navigable Waters Definition substantially changed the case-by-case analysis for determining a "significant nexus" from the proposed rule by defining such a nexus based on the effect of any one of nine factors including: (i) sediment trapping; (ii) nutrient recycling; (iii) pollutant trapping, transformation, filtering, and transport; (iv) retention and attenuation of flood waters; (v) runoff storage; (vi) contribution of flow; (vii) export of organic matter; (viii) export of food resources; and (ix) provision of life cycle dependent aquatic habitat (such as foraging, feeding, nesting, breeding,

spawning, or use as a nursery area) for species located in certain waters. This change was not subject to public notice or comment.

98.    Based on these and other changes between the proposed and final versions of the 2015 Navigable Waters Definition, Plaintiffs were deprived of notice and an opportunity to comment on substantive changes to the proposed rule. Therefore, the final 2015 Navigable Waters Definition is invalid and should be set aside for procedural inadequacy under the Administrative Procedure Act. *See* 5 U.S.C. § 706(2).

## SIXTH CLAIM FOR RELIEF

### (Constitutional Violation: Impingement
### on Traditional State Authority)

99.    The preceding paragraphs are incorporated herein.

100.    In *SWANCC*, the Supreme Court held that federal regulation of small ponds and mudflats "would result in a significant impingement of the States' traditional and primary power over land and water use." 531 U.S. at 174.

101.    The 2015 Navigable Waters Definition extends federal jurisdiction so far into local land and water resources that it necessarily undermines State power, in violation of the Tenth Amendment. The Tenth Amendment Provides that "[t]he powers not delegated to the United States by the Constitution . . . are reserved to the States respectively, or to the people." U.S. Const. amend. X. Congress expressly acknowledged the prerogative of the States to regulate local land and water use in the Clean Water Act itself: "It is the policy of the Congress to recognize, preserve and protect the primary responsibilities and rights of the States to prevent, reduce, and eliminate pollution, to plan the development and use (including restoration, preservation, and enhancement) of land and water resources . . . ."

33 U.S.C. § 1251(b). Rather than preserve and protect these rights and responsibilities, the 2015 Navigable Waters Definition eviscerates them.

102.    Therefore, the 2015 Navigable Waters Definition is contrary to law, in violation of the Administrative Procedure Act. *See* 5 U.S.C. § 706(2).

### SEVENTH CLAIM FOR RELIEF
### (Constitutional Violation:
### Exceeding the Commerce Power)

103.    The preceding paragraphs are incorporated herein.

104.    In *SWANCC*, the Supreme Court not only recognized that federal regulation of small water bodies would impinge on the power of the States to regulate local land and water use, the Court also recognized that such regulation may exceed the scope of the commerce power as limited by that Court's decisions in *United States v. Lopez*, 514 U.S. 549 (1995), and *United States v. Morrison*, 529 U.S. 598 (2000). *SWANCC*, 531 U.S. at 173. The Supreme Court raised similar concerns in *Rapanos* over the Army's broad interpretation of tributaries and adjacent wetlands. "Likewise, just as we noted in *SWANCC*, the Corps' interpretation stretches the outer limits of Congress's commerce power." *Rapanos*, 547 U.S. at 738 (Scalia, J., for the plurality). But here, the 2015 Navigable Waters Definition goes even further than the interpretation of "navigable waters" advanced in those cases.

105.    The 2015 Navigable Waters Definition includes "all waters" which are, have been, or reasonably could be used "in interstate or foreign commerce." 33 C.F.R. § 328.3(a)(1); 80 Fed. Reg. 37,104 (June 29, 2015). This would include waters included within *The Daniel Ball* definition of navigable waters of the United States, which are

limited to those waters that can be used to transport interstate commerce. 77 U.S. at 563. This is consistent with the Supreme Court's statement that the Act's application is limited to Congress' traditional concern with navigation. But the 2015 Navigable Waters Definition extends far beyond, to include waters merely used in or related to interstate commerce.

106.    Therefore, the 2015 Navigable Waters Definition is contrary to law, in violation of the Administrative Procedure Act. *See* 5 U.S.C. § 706(2).

## EIGHTH CLAIM FOR RELIEF
### (Constitutional Violation: Void for Vagueness)

107.    The preceding paragraphs are incorporated herein.

108.    The Act imposes criminal penalties for violations of its protections of "navigable waters." 33 U.S.C. § 1319(c).

109.    The Supreme Court has held, in *SWANCC* and *Rapanos*, that the term "navigable waters" in the Act does not encompass all non-navigable waters upstream of waters that are navigable-in-fact.

110.    To the extent that the term "navigable waters" in the Act is properly interpreted to include non-navigable waters upstream of or isolated from navigable-in-fact waters, the Act provides no intelligible principle for determining which upstream non-navigable waters are included and which are not.

111.    The term "navigable waters" in the Act is thus void for vagueness, in violation of the Due Process Clause of the U.S. Constitution, if it is interpreted to include other than navigable-in-fact waters and the territorial seas.

112.    Therefore, the 2015 Navigable Waters Definition is contrary to law, in violation of the Administrative Procedure Act. *See* 5 U.S.C. § 706(2).

## PRAYER FOR RELIEF

Plaintiffs pray for judgment from this Court as follows:

1.    A declaratory judgment stating that the categorical regulation of all tributaries as defined by the 2015 Navigable Waters Definition is contrary to law and invalid;

2.    A declaratory judgment stating that the categorical regulation of adjacent waters as defined by the 2015 Navigable Waters Definition is contrary to law and invalid;

3.    A declaratory judgment stating that the categorical regulation of all interstate waters as defined by the 2015 Navigable Waters Definition is contrary to law and invalid;

4.    A declaratory judgment stating that the regulation of hydrologically isolated waters and other waters that only may affect or may be used in interstate commerce, as defined by the 2015 Navigable Waters Definition, is contrary to law and invalid;

5.    A declaratory judgment stating that the 2015 Navigable Waters Definition is invalid because it lacked the notice and comments procedures required by the APA;

6.    A declaratory judgment stating that the 2015 Navigable Waters Definition unduly impinges on the States' traditional power over land and water use and therefore is invalid under the Constitution of the United States;

7.    A declaratory judgment stating that the 2015 Navigable Waters Definition exceeds the commerce power and is invalid under the Constitution of the United States;

8.     A declaratory judgment that the term "navigable waters" in the Clean Water Act is void for vagueness;

9.     An injunction barring Federal Defendants from asserting federal jurisdiction based on the 2015 Navigable Waters Definition or otherwise enforcing the 2015 Navigable Waters Definition;

10.    An award to Plaintiffs of reasonable attorneys' fees and costs, pursuant to 28 U.S.C. § 2412, or any other authority, including the Court's inherent authority, as appropriate; and,

11.    An award of any other relief as the Court may deem proper.

DATED: August 9, 2019.

Respectfully submitted:

**SAUL EWING ARNESTEIN & LEHR LLP**

By ___ s/ Samuel W. Diehl _____
NANCY W. BURKE (# 0161044)
SAMUEL W. DIEHL (# 0388371)
33 South Sixth Street Suite 4750
Minneapolis, Minnesota 55402
Telephone: (612) 225-2951
Facsimile: (612) 677-3844
Email: sam.diehl@saul.com
Email: nancy.burke@saul.com

-and-

**PACIFIC LEGAL FOUNDATION**

ANTHONY L. FRANÇOIS (Cal. Bar No. 184100)*
MOLLIE R. WILLIAMS (Cal. Bar No. 322970)*
DANIEL M. ORTNER (Va. Bar No. 89460)*
930 G Street
Sacramento, California 95814

- 29 -

Telephone: (916) 419-7111
Facsimile: (916) 419-7747
Email: TFrancois@pacificlegal.org
Email: MWilliams@pacificlegal.org
Email: DOrtner@pacificlegal.org
*Pro Hac Vice Admission Pending*

**ATTORNEYS FOR PLAINTIFFS,
KEVIN PIERCE; PIERCE INVESTMENT
COMPANY; PIERCE INVESTMENTS,
LLC; and HAWKES CO., INC.**